

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-1998

# Pappan Entr Inc v. Hardees Food Sys Inc

Precedential or Non-Precedential:

Docket 97-3473

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Pappan Entr Inc v. Hardees Food Sys Inc" (1998). *1998 Decisions.* Paper 109.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 13, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3473

PAPPAN ENTERPRISES, INC.

v.

HARDEE'S FOOD SYSTEMS, INC.;
MRO MID-ATLANTIC CORP.,
        Appellants

v.

LOUIS D. PAPPAN; PANAGIOTA PAPPAN

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 96-cv-01778)

Argued March 12, 1998

Before: BEFORE: STAPLETON and ALITO, Circuit Judges,
and O'KELLEY,* District Judge

(Opinion Filed May 13, 1998)

_____

*Honorable William C. O'Kelley, United States District Judge for the
Northern District of Georgia, sitting by designation.

Arthur I. Cantor (Argued)
Peter J. Klarfeld
Andrew P. Zappia
Wiley, Rein & Fielding
1776 K Street, N.W.
Washington, DC 20006
 Attorneys for Appellants

Gene J. Brockland (Argued)
Mark R. Dunn
Lori F. Kutilek
Herzog, Crebs & McGhee, LLP
One City Centre, 24th Floor
515 North Sixth Street
St. Louis, MO 63101
 Attorneys for Appellees

OPINION OF THE COURT

O'KELLEY, Senior District Judge:

Hardee's Food Systems, Inc. ("Hardee's") and MRO Mid-Atlantic Corp. ("MRO") appeal from the district court's order denying their motion for a preliminary injunction to restrain Pappan Enterprises, Inc. ("Pappan") from using the ROY ROGERS marks owned by Hardee's and MRO.1 Because we find that Hardee's and MRO have clearly established irreparable injury to their marks from Pappan's non-consensual use and that their irreparable injury as a result of that use outweighs any injury Pappan might suffer from the entry of a preliminary injunction, we will reverse the district court and remand with directions to grant the motion for a preliminary injunction.

I.

Pappan has been a ROY ROGERS franchisee since October, 1972. In 1990, MRO acquired the ROY ROGERS

_____

1. The ROY ROGERS marks are registered with the United States Patent and Trademark Office. Hardee's became the owner of the marks in 1990. The marks are now owned by MRO.

2

restaurant system and assumed all of the rights and obligations as franchisor under then-existing ROY ROGERS franchise agreements. At that time, pursuant to its franchise agreements, Pappan operated nineteen (19) ROY ROGERS restaurants in the greater Pittsburgh, Pennsylvania metropolitan area. Thereafter, Hardee's acquired the stock of MRO, and MRO became a wholly-owned subsidiary of Hardee's.

Between 1990 and 1993, Pappan closed thirteen (13) of its ROY ROGERS restaurants and transferred one (1) to a third party. Beginning in April, 1993, Pappan ceased making royalty and advertising payments on its five (5) remaining restaurants as required by the franchise agreements. In October 1994, the parties entered into a letter agreement ("letter agreement"). The parties agreed that Pappan would begin making all required payments under its existing franchise agreements on November 1, 1994, and would remain current on its payments thereafter. Further, the parties agreed that with respect to any restaurants sold or closed by Pappan by December 31, 1995, all amounts owed up to November 1, 1994, would be forgiven. At Pappan's request, the December 31, 1995, deadline was extended to March 31, 1996.

Pappan re-commenced royalty and advertising payments on or about November 1, 1994, for its five (5) remaining restaurants. In November or December 1995, Pappan again ceased making royalty and advertising payments for each of the five (5) restaurants. It appears that Pappan has not made any of the required payments since that time.

On September 26, 1996, Pappan filed the present action alleging breach of contract, breach of covenant of good faith and fair dealing, negligence, and tortious interference with business relations. Pappan contends that Hardee's and MRO have mismanaged the ROY ROGERS system and, as a result, it has lost significant value. By order dated February 20, 1997, the district court dismissed Pappan's claims for negligence and tortious interference with business relations.

On March 7, 1997, Hardee's and MRO filed their answer denying the two (2) remaining claims. Hardee's and MRO

3

also filed a counterclaim for breach of contract based on Pappan's failure to pay royalty and advertising fees as required by the franchise agreements. As of March 6, 1997, Pappan was in arrears as to the five (5) remaining restaurants in the amount of $172,038.70. Pursuant to the franchise agreements, MRO sent Pappan a Notice of Default and Termination regarding the unpaid royalties and advertising fees for each store. The notice informed Pappan that it had ten (10) days to cure the default or Pappan's five (5) remaining franchise agreements would terminate. Pappan received the notice on March 10, 1997, but failed to cure the default.

By letter dated March 25, 1997, MRO confirmed to Pappan that the franchise agreements had terminated on March 20, 1997. MRO demanded that Pappan cease using the ROY ROGERS marks and comply with the other post-termination obligations in the franchise agreements. Pappan failed to do so. On April 3, 1997, MRO filed an amended counterclaim asserting additional claims arising out of the termination of Pappan's franchise agreements, including claims for breach of post-termination contractual obligations, unjust enrichment, and trademark infringement.

On April 25, 1997, Hardee's and MRO moved for a preliminary injunction to restrain Pappan's continuing use of the ROY ROGERS marks. The district court denied Hardee's and MRO's motion, finding that the irreparable harm to Pappan from the entry of a preliminary injunction outweighed the irreparable harm to Hardee's and MRO from the denial of a preliminary injunction. MRO and Hardee's filed the instant appeal. Pappan admits that, despite the termination of the franchise agreements, it is continuing to use the ROY ROGERS marks and to hold itself out to the public as a ROY ROGERS franchisee.

II.

"We review the denial of a request for injunctive relief for an abuse of discretion." S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 374 (3d Cir. 1992)(citing Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192

(3d Cir. 1990)). "A district court abuses its discretion when its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 369 (3d Cir. 1995)(citations omitted). This court "cannot reverse unless the trial court has committed an obvious error in applying the law or a serious mistake in considering the proof." Opticians, 920 F.2d at 192 (citing Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 150 (3d Cir. 1984)).

When ruling on a motion for preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits at final hearing; (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. Jiffy Lube, 968 F.2d at 374 (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197–98 (3d Cir. 1990)); Opticians, 920 F.2d at 191–92 (citing Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 154 (3d Cir. 1984)).

The district court determined that the first and second factors -- the likelihood that Hardee's and MRO would prevail on the merits and irreparable harm to Hardee's and MRO as a result of Pappan's continued non-consensual use of the ROY ROGERS marks -- weighed in favor of granting preliminary injunctive relief. The district court then balanced Pappan's irreparable harm against Hardee's and MRO's irreparable harm and determined that the balancing of hardships weighed against granting preliminary injunctive relief. Accordingly, the district court declined to consider the fourth factor as all four (4) factors must favor the granting of injunctive relief. However, the court then noted that the public interest weighed in favor of granting preliminary injunctive relief. Report & Recommendation, 11 n.13.

A.

With respect to the first factor, Hardee's and MRO must demonstrate that their claim of damage from unauthorized

trademark use is likely to succeed at trial. To prevail on an infringement claim under S 32 of the Act, Hardee's and MRO must demonstrate that Pappan's use of the ROY ROGERS marks was/is unauthorized. Jiffy Lube, 968 F.2d at 375 (citing United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981)). Under S 43(a) of the Lanham Act, Hardee's and MRO can demonstrate injury from Pappan's use of the ROY ROGERS marks if such use is "likely to create confusion concerning the origin of the goods or services." Jiffy Lube, 968 F.2d at 375 (citing Opticians, 920 F.2d at 192).

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." First Keystone Fed. Sav. Bank v. First Keystone Mortgage, Inc., 923 F. Supp. 693, 703-04 (E.D. Pa. 1996)(citing Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994)). This court has held that where the identical mark is used concurrently by unrelated entities, the likelihood of confusion is inevitable. Opticians, 920 F.2d at 195; United States Jaycees, 639 F.2d at 142. It appears to be undisputed that Pappan is continuing to use the ROY ROGERS marks. The district court determined that such use created a likelihood of confusion among consumers concerning the origin of the goods and services. Report & Recommendation, 4. Accordingly, the district court found that the first factor -- the likelihood that Hardee's and MRO will prevail on the merits -- weighed in favor of granting preliminary injunctive relief. We agree.

Pappan disputes the district court's determination and alleges several Lanham Act defenses. 15 U.S.C. S 1115(b). Pappan asserts that these defenses render the likelihood that Hardee's and MRO will prevail on the merits speculative. If a defendant prevails on one of the statutory defenses in a trademark infringement case, "the plaintiff loses the presumption of validity, ownership and right to protection." First Keystone, 923 F. Supp. at 701 (citing Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 291 (3d Cir.), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.E.2d 324 (1991)). Pappan asserts that the doctrines of laches

6

and acquiescence apply in this case and preclude a finding that Hardee's and MRO are likely to prevail on the merits of their infringement claim. The district court considered Pappan's statutory defenses and determined that neither laches nor acquiescence was a viable defense to Hardee's and MRO's infringement claim.

Laches is an equitable doctrine that prevents recovery when a defendant can show inexcusable delay in instituting suit and prejudice to the defendant resulting from such delay. First Keystone, 923 F. Supp. at 701 (citing University of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1044 (3d Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.E.2d 933 (1982)). The doctrine of acquiescence applies when the trademark owner, by affirmative word or deed, conveys its implied consent to another. 4 McCarthy On Trademarks and Unfair Competition, S 31.51 at 31–76 (4th ed. 1997). The facts of this case show that Hardee's and MRO sought a preliminary injunction one (1) month after the franchises were terminated.

Pappan asserts that the relevant time period in considering Hardee's and MRO's delay is the fifteen (15) month period during which Pappan was failing to pay the required royalty and advertising payments while continuing to use the ROY ROGERS marks. As the district court held, however, Pappan did not begin infringing on the ROY ROGERS marks until Hardee's and MRO terminated Pappan's franchise agreements. Until that time, Hardee's and MRO had no basis upon which to seek an injunction, and their failure to do so does not constitute delay.

Similarly, Pappan argues that Hardee's and MRO consented to Pappan's trademark infringement when they continued to do business with Pappan after Pappan began defaulting on its required fees in late 1995. But Pappan again confuses the relevant time period; Pappan did not begin infringing upon Hardee's and MRO's trademark until March 20, 1997. There is no evidence that Hardee's and MRO continued to do business with Pappan after this date.

Accordingly, the district court determined that the doctrines of laches and acquiescence were not applicable in that there was no unreasonable delay in applying for relief.

7

Report & Recommendation, 7. We agree and uphold the district court's ruling on the issue of Hardee's and MRO's likelihood of success on the merits without further discussion.

B.

The second factor a court must consider before granting preliminary injunctive relief is the extent to which plaintiff will suffer irreparable injury if preliminary injunctive relief is denied. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Opticians, 920 F.2d at 195. Irreparable injury can also be based upon the possibility of confusion. Id. at 196. This court has held that once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury. Opticians, 920 F.2d at 196-97 (citations omitted).

The district court found that Hardee's and MRO had shown irreparable injury given that the court had previously found that the likelihood of confusion was inevitable because the identical trademark was being used simultaneously by both Pappan and MRO. Accordingly, the district court determined that the second factor weighed in favor of granting preliminary injunctive relief. Report & Recommendation, 9.

C.

The third factor a district court must consider before granting preliminary injunctive relief is the harm defendant might suffer should the relief be granted. In considering this harm, the district court must undertake to balance the hardships to the respective parties. Opticians, 920 F.2d at 197. The court must "ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." Id.

The district court found that Pappan would suffer irreparable injury should it be enjoined from using the ROY ROGERS marks. Report & Recommendation, 9. In support of this finding, the district court noted that Pappan had

8

continued to invest money in the restaurants, including several months of logoed product, and had continued to build up the goodwill of its customers. Id. The district court then balanced the hardships to the parties and found in favor of Pappan.

The district court determined that Hardee's and MRO had failed to specify in what manner they had been harmed. The district court also found that Hardee's and MRO had demonstrated a lack of interest in the ROY ROGERS system for years. The district court stated:

> Hardee's and MRO's apparent efforts to disengage themselves from the Roy Rogers system does not suggest that they will suffer greater harm than Pappan if the injunction is denied. Moreover, it was largely because of [Hardee's and MRO's] failure to take any action to terminate Pappan's franchises for fifteen months knowing that it was not receiving their royalty payments and advertising fees and their willingness to forgive past due fees that Pappan continued to invest monies into its restaurants. Under these circumstances, it does not appear that the hardship suffered by [Hardee's and MRO] at this juncture outweighs the harm which would befall Pappan should we grant the requested relief.

Report & Recommendation, 10. This finding by the district court constitutes clear error, and we now reverse.

The district court's determination that Hardee's and MRO failed to specify in what manner they had been injured is unsupported by the record. The district court found, and we agree, that Hardee's and MRO have clearly demonstrated irreparable injury as a result of Pappan's non-consensual use of the ROY ROGERS marks in the forms of loss of control of reputation and the inevitable likelihood of confusion to consumers. Pappan, on the other hand, has failed to demonstrate irreparable injury. Moreover, any difficulties Pappan now faces were brought on by its own conduct in continuing to use the ROY ROGERS marks despite the termination of the franchise agreements.

9

Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." Opticians, 920 F.2d at 195 (citing Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987)). The district court found that Pappan would suffer significant financial injuries should the injunction issue, including several months worth of logoed product. The district court, however, did not set forth what alleged injuries Pappan would suffer that could not be remedied by money damages. Pappan argues that it would suffer the loss of its customers' goodwill if it were forced to convert to a non-affiliated restaurant and then to another chain shortly thereafter. However, the portion of the case cited by Pappan in support of this argument addresses the injuries of the party whose mark is being infringed. Opticians, 920 F.2d at 195. The concept of customers' goodwill in the context of trademark law is goodwill for the mark, not for the specific restaurant.

The self-inflicted nature of any harm suffered by Pappan also weighs in favor of granting preliminary injunctive relief. This court held in Jiffy Lube and Opticians that a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark. Jiffy Lube, 968 F.2d at 379; Opticicans, 902 F.2d at 197. Lastly, Mr. Demetrios Pappan, President of Pappan Enterprises, Inc., stated in his affidavit dated June 9, 1997, that "Pappan could stop using the ROY ROGERS marks in the next four to six months without being harmed, ... ." Affidavit of Demetrios Pappan, P 8. Accordingly, it does not appear that Pappan will suffer irreparable harm should the preliminary injunction issue.

In balancing the hardships to the parties, we believe that any injury Pappan might suffer as a result of the issuance of a preliminary injunction is outweighed by the irreparable harm Hardee's and MRO would continue to suffer as a result of Pappan's non-consensual use of the ROY ROGERS marks. Pappan argues that the district court was correct in finding that because Hardee's and MRO had demonstrated a lack of interest in the ROY ROGERS system for years, any injury they might suffer as a result of Pappan's continued use of the marks was minimal. Pappan further argues that

10

Hardee's and MRO's alleged injury is self-inflicted, resulting from Hardee's and MRO's failure to fulfill their obligations under the franchise agreements.

We first note that Pappan is not arguing that Hardee's and MRO have abandoned the ROY ROGERS marks. Appellee's Brief, 22-23. Pappan instead appears to argue that because Hardee's and MRO have reduced the number of ROY ROGERS franchisees, they have demonstrated a lack of interest in the ROY ROGERS system and thus Pappan's continued unauthorized use of the ROY ROGERS marks will cause them little harm. Courts have recognized that a trademark owner's decision to reduce the size of its business or to cease operations alone does not undermine the owner's legal right to enforce and protect its trademark. See Defiance Button Machine Co. v. C & C Metal Prods. Corp., 759 F.2d 1053, 1061 (2d Cir.), cert . denied, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); Berni v. Int'l Gourmet Restaurants of Am., Inc., 838 F.2d 642, 646 (2d Cir. 1988). Moreover, Hardee's and MRO have clearly established irreparable injury.

With respect to Pappan's argument that Hardee's and MRO's injury is self-inflicted and thus precludes the issuance of a preliminary injunction, the courtfinds Pappan's argument to be without merit. Pappan's non-consensual use of the ROY ROGERS marks is the direct cause of Hardee's and MRO's irreparable injury. Pappan argues that Hardee's and MRO's injury is self-inflicted due to their failure to fulfill their contractual obligations to Pappan. In other words, Pappan argues that because Hardee's and MRO have failed to fulfill their contractual obligations, Pappan has been forced to continue using the ROY ROGERS marks following termination of the franchise agreements.

"Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." Jiffy Lube, 968 F.2d at 376. In Jiffy

11

Lube, this court followed several other courts in applying this law to franchise termination disputes. This court held that "[w]here the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act. Rather, pre-termination disputes affect the issue of damages." Id. at 377. We believe that Hardee's and MRO's irreparable injury is not self-inflicted.

Accordingly, the balancing of the parties' hardships weighs in favor of granting preliminary injunctive relief.

D.

Lastly, a district court must consider whether the issuance of a preliminary injunction serves the public interest before granting preliminary injunctive relief. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." Opticians, 920 F.2d at 197. The district court found that Pappan's use of the ROY ROGERS mark is likely to create confusion. The district court then determined that this finding mandated a finding that the public interest would be damaged if Pappan is permitted to continue using the mark. We agree and find that the district court did not err in finding that the public interest weighed in favor of granting preliminary injunctive relief.

Pappan argues that the public interest does not weigh in favor of granting preliminary injunctive relief. Pappan cites no law in support of its position. In addition, Pappan asserts that the district court did not actually find that the public interest weighed in favor of granting the relief because the order stated that the court was not addressing that issue. The court did, however, address the issue of public interest. Report & Recommendation, 11 n.13. Pappan's arguments regarding the public interest do not merit further discussion.

III.

Based on the foregoing analysis, we conclude that the district court clearly erred in denying Hardee's and MRO's

12

motion for a preliminary injunction. The district court's order denying Hardee's and MRO's motion for a preliminary injunction is hereby reversed. This case is hereby remanded to the district court with instructions to grant Hardee's and MRO's motion for a preliminary injunction.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit