CHANEL, INC., A New York Corporation, Plaintiff,

v.

Rafael MATOS, an individual, d/b/a Fandangotees.com d/b/a Jessmar d/b/a @Nenemott d/b/a Nenemott, and Does 1–10, Defendants.

Civil Action No. 14–3509 (JBS/KMW).

United States District Court, D. New Jersey.

Signed Aug. 13, 2015.

Gabriel H. Halpern, Esq., Pinilis Halpern, LLC, Morristown, NJ, for Plaintiff.

## OPINION

SIMANDLE, Chief Judge:

## I. INTRODUCTION

In this action for trademark infringement, counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) (hereinafter, the "Lanham Act"), Plaintiff Chanel, Inc. (hereinafter, "Plaintiff" or "Chanel") moves for default

judgment under Rule 55(b)(2), Fed.R.Civ. P., against Defendant Rafaél Matos, an individual, d/b/a fandangotees.com d/b/a jessmar d/b/a @nenemott d/b/a nenemott (hereinafter, "Defendant" or "Matos") for failure to answer or otherwise respond to Plaintiff's Complaint. [*See* Docket Item 9.]

For the reasons that follow, Plaintiff's motion will be granted in part, and the Court will enter a default judgment in favor of Plaintiff and against Defendant in the amount of $180,400. In addition, the Court will enter a permanent injunction, barring Defendant from, among other things, using Plaintiff's protected trademarks in connection with the sale of any unauthorized and/or counterfeit goods.

## II. BACKGROUND

### A. Factual and Procedural Background[1]

Chanel manufactures and distributes high quality clothing products bearing its long held Trademarks protected under Registration Numbers 1,241,264, 1,241,265, and 4,241,822 (hereinafter, the "Chanel Marks" or "Marks").[2] (Compl. at ¶¶ 2, 7.)

As a result of Chanel's extensive use and promotion of the Chanel Marks, it alleges that these uniquely identifying marks distinctly symbolize "Chanel's quality, reputation, and goodwill," and states that members of the international consuming public "readily identify" and widely recognize "merchandise bearing the Chanel Marks, as being high quality merchandise sponsored and approved by Chanel."[3] (*Id.* at ¶¶ 10–13.) As a result, Chanel "carefully monitor[s] and police[s] the use" of its Marks. (*Id.* at ¶ 12.) Indeed, "as part of its ongoing investigations regarding the sale of counterfeit" branded products, Chanel retains private investigative firms "to investigate the suspected sales of counterfeit Chanel branded products." (Sisbarro Dec. at ¶ 10.) This action arises from one such investigation.

Specifically, in January 2014, Plaintiff hired a private investigator (hereinafter, the "Investigator") to investigate Defendant's online advertisement of "CHANEL" and/or "Chanel Inspired" products. (*See generally* Popp Dec. at ¶ 3; *see also* Ex. 2 to Popp Dec.) In connection with this investigation, the Investigator researched Defendant and his website, and ultimately contacted him by telephone, in order to express interest in Defendant's "Chanel Inspired" products. (Popp Dec. at ¶ 4; Ex. 1 to Gaffigan Dec. (setting forth screenshots of Defendant's websites).) During the conversation, the Investigator certifies that Defendant identified himself as "Rafael Matos" and confirmed that his products "aren't the real Chanel shirts,"

, and

(Compl. at ¶¶ 2, 7.)

---

1. Plaintiff filed the initial Complaint in this action on June 3, 2014 [*see* Docket Item 1], and successfully effectuated service upon Defendant at his primary residence and principal place of business on June 9, 2014. [*See* Docket Item 5.] Following Defendant's failure to answer, move, or otherwise respond to Plaintiff's Complaint, the Clerk of Court entered default on October 30, 2014. [*See* Docket Item 7.] The pending motion followed.

2. These Marks specifically appear as CHANEL,

3. Based upon the pervasive extent of these Marks' recognition, Chanel further alleges that they qualify as "famous marks" under

despite their markings. (Popp Dec. at ¶ 4.) The Investigator thereafter ordered "3 chanel blk shirts" from Defendant's online market for $45. (*Id.* at ¶ 5.)

Following receipt of the three shirts bearing marks seemingly identical to the Chanel Marks, the investigator forwarded the shirts to Adrienne Hahn Sibarro (hereinafter, "Ms. Sisbarro"), the Director of Intellectual Property and Legal Operations for Chanel, for purposes of review and inspection. (*Id.* at ¶ 8; *see also* Sisbarro Dec. at ¶ 2.) Upon visual inspection, Ms. Sisbarro certifies that she quickly identified them as "non-genuine, unauthorized Chanel branded products," of a quality and price point substantially different from that of Chanel's genuine goods. (Sisbarro Dec. at ¶ 12.)

Chanel, however, has "never" authorized Defendant to use its Marks, nor consented to Defendant's distribution of infringing products. (Compl. at ¶ 9, 20; *see also* Sisbarro Dec. at ¶ 9.) Nevertheless, Defendant has, with "full knowledge of Chanel's ownership of the Chanel Marks," actively advertised, distributed, and sold clothing products unlawfully bearing the Chanel Marks. (Compl. at ¶¶ 15–17.) As a result, Chanel alleges that Defendant has knowingly, intentionally, and/or blindfully engaged in activities that infringe upon "Chanel's rights for the purpose of trading on the goodwill and reputation of Chanel," and to the detriment of the "consuming public" and Chanel. (*Id.* at ¶¶ 21–22.) Chanel therefore seeks monetary damages and injunctive relief for Defendant's various violations of Lanham Act. (*Id.* at ¶¶ 27–41.)

**B. Plaintiff's Arguments**

In the pending motion, Plaintiff argues that the unchallenged record in this action demonstrates its entitlement to a default judgment on Plaintiff's Lanham Act claims for trademark infringement, counterfeiting, and false designation, and an award of statutory damages, permanent injunctive relief, as well as costs of suit and interest. (*See* Pl.'s Br. at 6–16.)

**III. STANDARD OF REVIEW**

█ Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. *See* Fed.R.Civ.P. 55(b)(2); *see also Chanel v. Gordashevsky*, 558 F.Supp.2d 532, 535 (D.N.J.2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n. 9 (3d Cir.1990)). Nevertheless, the decision of whether to enter a default judgment rests within the sound "discretion of the district court," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir.1984), and the Court of Appeals for the Third Circuit has "repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable." *Id.* at 1181.

█ As a result, prior to entering a judgment of default, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction,[4] (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." *Teamsters Health & Welfare Fund of Phila. & Vicin-*

---

the Lanham Act, 15 U.S.C. § 1125(c). (Compl. at ¶ 11.)

4. For that reason, default judgments cannot be entered against unnamed or fictitious parties, including the unnamed "Does 1–10"

named in Plaintiff's Complaint. *See Flythe v. Solomon and Strauss, LLC*, No. 09–6120, 2011 WL 2314391, at *1 (E.D.Pa. June 8, 2011) (collecting cases, and finding that a default judgment could not be entered against an "unnamed defendant").

*ity v. Dubin Paper Co.,* No. 11–7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). In so considering, a court must accept as true every "well-pled" factual allegation of the complaint. *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990). A court need not, however, accept the plaintiff's legal conclusions, nor the plaintiff's assertions concerning damages. *See id.; see also Doe v. Simone,* No. 12–5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) (citations omitted).

## IV. DISCUSSION

### A. The Court Has Personal Jurisdiction over Defendant

 As to the first inquiry, the Court must consider whether it possesses specific or general personal jurisdiction over Defendant, an individual who resides and conducts business in New Jersey.[5] For that reason, however, this inquiry proves relatively straightforward, because an "individual's domicile," or home, constitutes the paradigmatic "forum for the exercise of general jurisdiction." *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011)). Here, the record developed in this action plainly reflects that this forum constitutes Defendant's domicile. (*See, e.g.,* Compl. at ¶ 3 (identifying Defendant's New Jersey address); Ex. 4 to Popp Dec. (identifying the same address).) Moreover, Plaintiff personally served its Complaint upon Defendant at

his residence in New Jersey, and this method of in-forum service has long provided a basis to exercise personal jurisdiction. *See, e.g., Erwin v. Waller Capital Partners, LLC,* No. 10–3283, 2010 WL 4053553, at *3 (D.N.J. Oct. 14, 2010) (finding the exercise of personal jurisdiction over the defendant proper, the plaintiff "properly served" the defendant "with a copy of the Summons and the Complaint at his Mantoloking, N.J. residence"). As a result, the Court finds that the undisputed facts readily support the exercise of personal jurisdiction over Defendant.

### B. The Unchallenged Record Establishes Legitimate Claims for Trademark Infringement and Counterfeiting under the Lanham Act

 With respect to the second inquiry, the Court must consider whether the undisputed facts of Plaintiff's Complaint allege legitimate claims for trademark infringement, counterfeiting, and/or false designation of origin.[6]

#### 1. Trademark Infringement

 " 'The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.' " *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994) (citations omitted). As a result, in order to prevail on its trademark infringement claim, Plaintiff must demonstrate: (1) that it holds and owns valid and legally protectable marks;

---

5. Based upon Plaintiff's certificate of service, the Court finds sufficient proof that Plaintiff personally served Defendant at his primary residence and *principal place of business in* Mays Landing, New Jersey. [*See* Docket Item 5.]

6. Courts in the Third Circuit consider claims for trademark infringement and for false des-

ignation of origin under an identical standard. *A & H Sportswear, Inc.,* 237 F.3d at 210. As a result, the Court need not independently address Plaintiff's counterfeiting claim, which, in any event, provides no independent entitlement to relief. *See* 15 U.S.C. § 1117 (setting forth the allowable damages under the Lanham Act).

(2) that it owns the Chanel Marks; and (3) that Defendant's use of the Marks will likely cause confusion as to the source, affiliation, and/or sponsorship of the goods. *See Fisons Horticulture, Inc.,* 30 F.3d at 472; *see also Coach, Inc. v. Ocean Point Gifts,* Nó. 09–4215, 2010 WL 2521444, at *2 (D.N.J. June 14, 2010) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir. 2000)).

■ The record developed in connection with the pending motion readily establishes the first two requirements, validity and legal protectability. Indeed, the certificates of registration issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") for the Chanel Marks demonstrate, on their face, the validity and protectability of the Marks, as well as Chanel's ownership. (*See* Ex. 1 to Sisbarro Dec.) For that reason, the Court finds the first two requirements satisfied. *See Coach, Inc. v. Cosmetic House,* No. 10–2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a)) (noting that a certificate of registration constitutes prima facie evidence of the validity and ownership of the marks); *Ocean Point Gifts,* No. 09–4215, 2010 WL 2521444, at *3 (same).

■ Plaintiff, however, must also prove the third requirement, the likelihood of confusion, "which exists 'when the consumers viewing the mark would probably assume'" its association " 'with the source of a different product or service identified by a similar mark.'" *Fisons Horticulture, Inc.,* 30 F.3d at 472 (citation omitted). In applying this standard, the "showing of proof" depends upon whether the goods and services offered by the alleged infringer directly compete with the goods and service offered by the trademark owner. *Id.* (citation omitted). Where, however, " 'the trademark owner and the alleged infringer deal in competing goods or services,'" as here, " 'the court need rarely look beyond the mark itself.' " [7] *Id.* at 473 (citations omitted). In other words, the analysis turns upon whether the marks prove " 'confusingly similar.' " *Id.* (citation omitted).

Here, even a cursory inspection of the goods offered for sale—and indeed sold— by Defendants leads the Court to the inescapable conclusion that the products advertised and distributed by Defendant bear far more than a confusingly similar mark. Indeed, Defendant's products bear *exact* replicas of the protected Chanel Marks. (*See* Exs. 2 & 4 to Popp Dec.) The identity of the marks, in turn, creates a great likelihood of confusion, and indeed makes such confusion inevitable.[8] *See S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3d Cir.1992) (citation omitted) (finding "a great likelihood of confusion" when an infringer uses the exact trademark); *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 195 (3d Cir.1990) (same) (citations omitted)

For these reasons, the Court finds that Plaintiff has sufficiently stated a claim for trademark infringement under the Lanham Act, and next addresses Plaintiff's related claim for trademark counterfeiting.

### 2. Trademark Counterfeiting

■ In order to prevail on a claim for trademark counterfeiting, the plaintiff must demonstrate that the "(1) defendants

---

7. Where, however, the alleged infringer produces a non-competing product, the Court instead turns to the ten-factor test adopted by the Court of Appeals for the Third Circuit. *See Fisons Horticulture, Inc.,* 30 F.3d at 473 (setting forth the factors).

8. The fact that Defendant's website identifies Defendant's products as "Chanel inspired" does not alter this conclusion, because Defendant's marks remain identical to the protected Chanel Marks. (*See* Ex. 1 to Gaffigan Dec.)

infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)," and that (2) the alleged infringer intentionally used the trademark with knowledge of its counterfeit nature, or remained willfully blind to the product's counterfeit nature. *Gordashevsky*, 558 F.Supp.2d at 536.

Having already determined, for the reasons stated above, that Defendant has infringed Plaintiff's registered marks, the Court need only consider whether the undisputed record demonstrates that Defendant intentionally counterfeited the Chanel Marks and/or acted with deliberate disregard. *See id.* Coach alleges in this instance that, "members of the consuming public readily identify merchandise bearing the Chanel Marks, as being high quality merchandise sponsored and approved by Chanel." (Compl. at ¶ 13.) These allegations, accepted as true, demonstrate that Defendant has, at the very least, acted with deliberate disregard of Chanel's protected rights in the Marks, in an effort to profit from Chanel's international reputation for high-end clothing products. *See Coach, Inc. v. Quisqueya Agency Inc.*, No. 13–3261, 2014 WL 3345434, at *1 (D.N.J. July 8, 2014) (finding similar allegations sufficient to meet the second element of a trademark counterfeiting claim); *Coach, Inc. v. Paula's Store Sportwear LLC*, No. 13–3263, 2014 WL 347893, at *2 (D.N.J. Jan. 31, 2014) (same). Beyond these allegations, the certifications attached to Plaintiff's motion reflect that Defendant himself acknowledged the counterfeit nature of his "Chanel" products. (*See* Popp Dec. at ¶ 4 (describing a conversation in which Defendant allegedly stated that his products "aren't the real Chanel shirts," and are instated "just order[ed] . . . from overseas").)

For these reasons, the Court finds that the unchallenged facts establish a legitimate cause of action for trademark counterfeiting.

## C. The Entry of Default Judgment is Proper

Finally, with respect to the third inquiry, whether the entry of default judgment would be proper, the Court must consider "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J.2008).

Here, Defendant has failed to proffer any defense to Plaintiff's claims, meritorious or otherwise, and the Complaint does not otherwise suggest the existence of any meritorious defense. *See Surdi v. Prudential Ins. Co. of Am.*, No. 08–225, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) ("The facts as alleged in the Complaint provide no indication of a meritorious defense."). Moreover, because Plaintiff has no other means of seeking damages for the harm caused by Defendant, the Court finds that Plaintiff would be prejudiced in the absence of a default judgment. *See Ocean Point Gifts*, 2010 WL 2521444, at *5 (finding that the defendant's failure to answer complaint prevented the plaintiff "from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion"); *Gowan v. Cont'l Airlines, Inc.*, No. 10–1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (noting that the inability to "vindicate rights" absent a default judgment constitutes prejudice); *Ramada Worldwide Inc. v. Courtney Hotels USA, Inc.*, No. 11–896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("If a default judgment is not entered, [the plaintiff] will continue to be harmed because it will not be able to seek damages for its injuries due to defendant's

continuing refusal to participate in this case."). Lastly, because Defendant failed to defend against this litigation despite service of the Complaint, the Court finds Defendant's delay attributable to culpable conduct. *See Lee v. A to Z Trading LLC,* No. 12–4624, 2014 WL 7339195, *2 (D.N.J. Dec. 23, 2014) (finding the defendant's failure to respond despite awareness of the litigation "due to culpable conduct").

For all of these reasons, the Court finds default judgment warranted as to Plaintiff's claims for trademark infringement and counterfeiting. Nevertheless, the Court must still assess the amount of damages sought by Plaintiff, as well as Plaintiff's request for permanent injunctive relief.

### D. The Court will award damages under the Lanham Act in the amount of $180,400.

In the pending application, Plaintiff requests an award of $360,000 in statutory damages, together with costs of suit, pursuant to the Lanham Act, 15 U.S.C. § 1117. (*See* Pl.'s Br. at 14–15.) The Court will address each request in turn.

#### 1. Lanham Act Statutory Damages

■ In actions involving the use of counterfeit marks, the Lanham Act permits the plaintiff, as here, to elect to recover an award of statutory damages, rather than actual damages and profits. *See* 15 U.S.C. § 1117(c). With regard to statutory damages, the Lanham Act, in turn, provides that the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the defendant used the counterfeit mark willfully, the maximum increases to $2,000,000 per mark per type of good sold, offered for sale, or distributed. *See* 15 U.S.C. § 1117(c)(2). The Court possesses wide discretion in determining an appropriate award within this range.

■ Here, Plaintiff requests statutory damages in the total amount of $360,000, for the "two (2) types of goods, namely shirts and parts, bearing marks which were in fact counterfeits of the Chanel Marks protected by three (3) Federal trademark registrations for such goods." (Pl.'s Br. at 13.) In other words, Plaintiff seeks $60,000 for each infringing act at issue in this litigation. (*See id.* at 13–14.) In support of this request, Plaintiff states that the Court should "start with a baseline [for] the statutory award of $10,-000.00,[9] treble it to reflect Defendant's willfulness, and then double it for the purpose of deterrence."[10] (*Id.* at 13.)

■ " 'In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants.' " *Ocean Point Gifts,* 2010 WL 2521444, at *6 (quoting *Louis Vuitton Malletier v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002)). Statutory damages, however, "serve as a substitute for actual damages." *Ocean Point Gifts,* 2010 WL 2521444, at *6 (citations omitted). As a result, the requested damages should " 'bear some [discernible] relation to the actual damages suffered.' " *Id.* (citations omitted).

**9.** Plaintiff, however, provides no explanation concerning the basis for this starting point.

**10.** Because the record demonstrates that Defendant intentionally counterfeited the Chanel Marks, the maximum per violation statutory damage amount increases to $2,000,000. *See*

15 U.S.C. § 1117(c)(2). However, because Plaintiff elected statutory damages rather than an award of actual damages and profits, Plaintiff forfeited its right to request treble damages. *See* 15 U.S.C. § 1117(b) (noting that treble damages only applies to an award of "profits or [actual] damages").

 Nevertheless, in assessing the propriety of a requested award, the Court "may be guided by past statutory damages awards." *Id.* (citations omitted). In *Ocean Point Gifts* and *Fashion Paradise, LLC*, this Court surveyed relevant Lanham Act cases, and determined that two factors overwhelmingly motivated statutory damage awards: the point of sale of the infringing goods and the monetary value of the item counterfeited. *See, e.g., Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *7 (D.N.J. Jan. 20, 2012). As relevant here, the Court concluded that cases involving the internet distribution of counterfeit luxury goods routinely resulted in "high damage awards due in part to the wide market exposure that the Internet can provide." *Ocean Point Gifts*, 2010 WL 2521444, at *6 (collecting cases involving high damage awards in internet cases). Indeed, at least one court has stated that internet cases represent "the new era of counterfeiting." *Veit*, 211 F.Supp.2d at 584.

 This action amounts, in essence, to the prototypical internet case, in that it involves a suit against someone selling counterfeit luxury items on the internet (rather than more localized at a storefront), thereby enabling the counterfeited goods to be widely disseminated. For that reason, the Court finds an award in excess of the statutory minimum warranted.

Because there are two types of goods and three marks, the total statutory damage amount must be not less than $6,000, nor more than $12,000,000. Plaintiff has, as stated above, requested sixty times the minimum statutory damages, $60,000 per mark per good for a total of $360,000. (*See* Pl.'s Br. at 14.)

 In fixing the amount of statutory damages in this instance, the Court will, as it has done on multiple occasions, follow the approach of *Platypus Wear v. Bad Boy Club, Inc.*, No. 08–2662, 2009 WL 2147843 (D.N.J. July 15, 2009), by considering the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id.* at *7 (citation omitted); *see also Ocean Point Gifts*, 2010 WL 2521444, at *7 (considering these factors); *Fashion Paradise, LLC*, 2012 WL 194092, at *8 (same).

 In applying these factors to this action, the Court will award $30,000 per infringement for a total of $180,000, thirty times the minimum statutory damages. This amount falls well within the parameters established by Congress, takes into account Defendant's culpability (and even willfulness), and constitutes a sum significant enough to compensate Plaintiff for any arguable losses and to deter Defendant and others. This award also takes into account that Defendant sold limited types of goods bearing counterfeited marks, namely, shirts and pants, and therefore invaded only a narrow segment of the types of goods bearing genuine Chanel Marks. (*See* Sisbarro Dec. at ¶ 4 (noting that the Chanel Marks generally appear on, among other things, suits, jackets, skirts, dresses, pants, blouses, tunics, sweaters, cardigans, tee-shirts, coats, raincoats, scarves, shoes and boots).) Moreover, this statutory damage award does not preclude the Court from revisiting this issue in the event Defendant or those in privity with him violate the injunction being entered herein.

For these reasons, the Court will award $180,000 in statutory damages for Defendant's Lanham Act violations.

## 2. Costs of Suit

In addition to statutory damages, Plaintiff requests an award of costs in the amount of the $400 filing fee for this litigation. (*See* Pl.'s Br. at 15.) In the event a defendant violates a protected mark, the Lanham Act entitles the plaintiff to "the costs of the action." 15 U.S.C. § 1117(a)(3). As a result, the Court will award Plaintiff the requested costs, and will include an award of the $400 filing fee in the default judgment.[11]

### E. Permanent Injunctive Relief

Plaintiff lastly requests the equitable relief of a permanent injunction, barring Defendant from infringing and/or counterfeiting the Chanel Marks.

"A permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement." *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed.Cir.1996). Nevertheless, in seeking a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages," prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Based upon the present record, the Court finds that Plaintiff has met the four-factor test for injunctive relief, and

the Court grants permanent injunctive relief.

Indeed, having established that Defendant's use of Plaintiff's *exact* Marks creates a clear case of confusion, and that Defendant's counterfeited products of inferior quality arguably diminish Chanel's reputation, irreparable injury becomes "'the inescapable conclusion.'" *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.1998) (citation omitted); *see also Cottman Transmissions Sys., LLC v. Gano*, No. 12–5223, 2013 WL 842709, at *6 (E.D.Pa. Mar. 7, 2013) (finding irreparable injury under similar circumstances). The Court therefore finds the first requirement, irreparable injury, satisfied. With respect to the second requirement, although a remedy at law would provide some degree of monetary relief, it would not adequately compensate Plaintiff for the reputational and goodwill injury associated with the distribution of low-quality counterfeit goods, nor would it necessarily prevent, or even impede, future trademark infringement. *See Coach, Inc. v. Bags & Accessories*, No. 10–2555, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 2009 WL 3633882, at *5 (D.N.J. Oct 28, 2009)). A balancing of hardships strongly favors issuance of an injunction. Indeed, the injunction sought only requires Defendant to abide by the law and to refrain from infringing the federally protected Chanel Marks, whereas in the absence of an injunction, Plaintiff faces the hardships that gave rise to this litigation: loss of reputation, goodwill, and sales. *See id.* In that respect, any harm suffered by Defendant as a result of an injunction would be self-inflicted. *See No-*

---

**11.** Plaintiff also requests an award of prejudgment interest pursuant to 28 U.S.C. § 1961. The Court may, in its discretion, award prejudgment interest. *See Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir.1990). Nevertheless, such an award

is ordinarily reserved for "'exceptional' cases," and Plaintiff has not demonstrated that this action rises to that level. *Id.* (citations omitted). For that reason, Plaintiff's request for prejudgment interest will be denied.

*vartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir.2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself."). Finally, issuing an injunction that will enforce Plaintiff's rights in the Chanel Marks furthers the public's interest in the protection of trademarks (and the trademark holder's property interest) and in the avoidance of consumer confusion. *See Opticians Ass'n of Am.*, 920 F.2d at 197 ("Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."); *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir.1984) ("[T]he public interest is advanced by recognition of property interests in trademarks. Thus the public interest is advanced by preventing the erosion of the value of such interests.").

For these reasons, the Court will grant Plaintiff the relief it seeks by enjoining Defendant from infringing and/or counterfeiting the Chanel Marks. *See Holt's Co. v. Hoboken Cigars, LLC*, No. 09–3782, 2010 WL 4687843, at *5 (D.N.J. Nov. 10, 2010) ("The permanent injunction requested here is proper, considering it simply requires that Defendants continue to conform their actions to the relevant trademark law."); *Gordashevsky*, 558 F.Supp.2d at 540 ("[B]ecause the Defendants' illegal conduct does not serve a legitimate purpose and harms both Chanel and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief.").

## V. CONCLUSION

For all of these reasons, the Court will grant Plaintiff's motion for default judg-

ment, will enter a default judgment of $180,400, and will issue a permanent injunction. An accompanying order for default judgment and permanent injunction will be entered.

## DEFAULT JUDGMENT AND PERMANENT INJUNCTION

This matter comes before the Court by way of Plaintiff Chanel Inc.'s (hereinafter, "Plaintiff") motion for default judgment [*see* Docket Item 9]; and the Court having considered the submissions; and for the reasons explained in the Opinion of today's date; and for good cause shown;

IT IS this *13th* day of *August,* 2015, hereby

**ORDERED** that Plaintiff's motion for default judgment [Docket Item 9] shall be, and hereby is, *GRANTED IN PART;* and it is further

**ORDERED** that Judgment shall be entered in favor of Plaintiff Chanel, Inc. and against Defendant Rafael Matos, an individual, d/b/a fandangotees.com d/b/a jessmar d/b/a @nenemott d/b/a nenemot in the amount of *$180,400;* and it is further

**ORDERED** that Defendant and his officers, agents, servants, employees and attorneys, and all persons acting in concert and participation with Defendant are hereby *PERMANENTLY RESTRAINED AND ENJOINED* from:

a. manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Plaintiff's trademarks, bearing Registration Numbers 1,241,264, 1,241,265, and 4,241,822 (hereinafter, the "Chanel Marks" or "Marks"); [12]

**12.** These Marks specifically appear as CHA- NEL,

b. using the Chanel Marks in connection with the sale of any unauthorized goods;

c. using any logo and/or layout which may be calculated to falsely advertise the services or products of Defendant offered for sale or offered for sale via the Defendant's businesses "fandangotees.com," "jessmar," "nenmott," and "@nenmott" (collectively, the "Defendant's Businesses") and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

d. falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

e. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant offered for sale or sold via the Defendant's Businesses and/or any other website or business are in any way endorsed by, approved by, and/or associated with Plaintiff;

f. using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant via the Defendant's Businesses and/or any other website or business, including, without limitation, clothing products, including, shirts and pants;

g. affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant via the Defendant's Businesses and/or any other website or business, as being those of Plaintiff or in any way endorsed by Plaintiff;

h. otherwise unfairly competing with Plaintiff; and

i. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and it is further

**ORDERED** that counsel for Plaintiff shall forthwith cause a copy of this Default Judgment and Permanent Injunction to be served upon Defendant by regular mail, with return receipt requested, at Defendant's last known address, or alternatively, by personal service, and to certify, by Affidavit of Service, that counsel for Plaintiff has done so; and it is further

**ORDERED** that the Clerk shall *CLOSE* this case upon the docket, without prejudice to reopening for further proceedings consistent with law.